IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

In Re:                                          )
                                                )
    Ex-L Tube, Inc.                             )       Case No.06-42967-7
                                                )
                Debtor.                         )
                                                )

## MEMORANDUM OPINION

The movant in this proceeding, Beta Steel Corporation ("Beta"), filed an involuntary petition of bankruptcy against Ex-L Tube, Inc. ("Ex-L") pursuant to 11 U.S.C. § 303 on October 31, 2006. In response to the involuntary petition, Ex-L filed a Motion to Dismiss Involuntary Petition and subsequently, Debtor's Amended Motion to Dismiss Involuntary Petition/Alternative Motion to Abstain or Dismiss Pursuant to Section 305 (the "Dismissal Motion").[1] The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rules 7052 and 9014( c) of the Federal Rules of Bankruptcy Procedure. Trial on the issue of whether an order for relief should be entered against Ex-L and on the Dismissal Motion was held on January 4, 2007, and after careful consideration of the issues and relevant law, the Court will grant the involuntary petition.

I. FACTUAL BACKGROUND

Ex-L was in the steel converter business until it experienced financial problems as a result of the down-turn in the domestic steel market in 2002 and 2003. When its secured creditor

---

[1] There was not a motion to abstain pursuant to 11 U.S.C. § 305 before the Court at the time of trial; therefore, the only issue for trial was whether the Court should enter an order for relief against Ex-L pursuant to § 303.

threatened to foreclose on its collateral, Ex-L sold substantially all of its assets to Steel Ventures, L.L.C., now known as Ex-L Tube, Inc., in a bulk sale for the sum of $6,467,100. The bulk sale occurred on August 29, 2003. Ex-L's president, Howard Hopkins, testified that as of July 31, 2003, Ex-L had paid off all of its creditors except: Steel King, Robert White, Jr., Robert White, Sr., Stratford Homes and Beta Steel.[2] Mr. Hopkins testified that the debts owed by Ex-L to the Whites and to Stratford Homes were reduced to judgment and have been due and owing since 2004. He testified that the debt owed to Steel King has been due and owing since 1989, and that, although Beta's debt has not yet been reduced to judgment, there is no dispute that Beta is owed $3,511,349, and has been since August 2003. Mr. Hopkins testified that at the time of trial, Ex-L owed a total amount to its remaining creditors of approximately $10 million.

In an effort to collect on its debt, in August 2003, Beta obtained from the Circuit Court of Clay County, Missouri, a writ of attachment, whereby $1 million of the proceeds from the bulk sale were attached and placed in an escrow account until the parties could determine the proper distribution of the remaining sale proceeds. In the Clay County action, Beta's position is that it is entitled to the entire $1 million because it is the only creditor who is not an insider. At trial, Beta asserted that it would accept distribution of the $1 million according to the priorities established by the Bankruptcy Code. Ex-L contends that $500,000 of the amount held in escrow is ear-marked for an alleged secured creditor, Stratford Homes, and that $250,000 is owed to each of the Whites for non-compete agreements. The litigation initiated by Beta is still pending in Clay County Circuit Court.

In addition to the $1 million of attached assets, Ex-L has approximately $200,000 in a

---

[2] Ex-L's Exhibit A.

bank account in Minnesota. Mr. Hopkins testified that Ex-L is using its remaining assets to pay its legal fees and various other expenses related to maintaining its corporate structure in Missouri and Minnesota. He testified that the only physical location of Ex-L's business was in Missouri and that it is no longer in operation.

Beta argues that Ex-L is not generally paying its debts as they become due as it has not paid any of its five remaining creditors anything since the bulk sale in 2003. Ex-L argues that it is paying all of its current debts as they become due, such as its legal counsel, accounting fees and various administrative expenses. It argues that it cannot make debt payments to any of the creditors identified in the Clay County lawsuit because such an action would be inconsistent with orders entered in that case. Beta points out that the Clay County judge has not issued an injunction prohibiting Ex-L from making debt payments to its creditors from assets other than the attached assets and argues that Ex-L is not generally paying its debts because it simply does not have the financial means to do so.

## II. DISCUSSION

Beta relies on 11 U.S.C. § 303(b)(2) as the basis for its involuntary petition in bankruptcy against Ex-L. This section provides in relevant part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title–
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable...by one or more of such holders that hold in the aggregate at least $12,300 of such claims.

11 U.S.C. § 303(b)(2).

The primary issue at trial was whether Ex-L was generally paying its debts as they

became due pursuant to 11 U.S.C. § 303(h)(1).[3]  Section 303(h)(1) states in relevant part:

> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed.  Otherwise, after trial, the court shall order relief against the debtor in an involuntary case...if
> > (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount.

11 U.S.C. § 303(h)(1).

Ex-L contests the involuntary petition by arguing: (1) that there exists a bona fide dispute, although not as to amount or liability, regarding the debts owed by Ex-L; (2) that Beta is a single creditor attempting to collect on an isolated debt via the bankruptcy court; and (3) that it is generally paying its debts as they become due, except for the debts identified in the Clay County action, as it argues that it is prohibited from paying those until the case is resolved.

Although Ex-L stipulated to the Court that it does not dispute the liability or amount of its debt to Beta, in its post-trial brief, it is apparently arguing that a *general* bona fide dispute exists as to all the debts identified in the Clay County action merely because of the issues raised in that litigation.  "A bona fide dispute exists if there are 'substantial' factual and legal questions raised by the debtor bearing upon the debtor's liability...".  *Bently v. Whiteside (In re Whiteside)*, 238 B.R. 468, 469 (Bankr. W.D. Mo.1999) *citing B.D.W. Assoc. v. Busy Beaver Buliding Centers, Inc.,* 865 F.2d 65, 66-67 (3rd Cir.1989); *see also Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir.1991).  The petitioning creditor has the burden of establishing a prima facie case that no bona fide dispute exists.  *Rimell*, 946 F.2d at 1365.  If that

---

[3] Although Ex-L raised in the Dismissal Motion the issues of venue, number of creditors and whether there exists a bona fide dispute of Ex-L's debt to Beta, it submitted to the Court at trial that these issues were no longer in dispute.

4

is established, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. *Id.*

At the trial, Beta had no problem establishing its prima facie case because Ex-L stipulated that it has owed Beta $3,511,549.35 since August 2003.  The evidence presented by Ex-L, attempting to establish that a bona fide dispute does exist, was unpersuasive.  Ex-L argues that because, in the Clay County action, Beta seeks an award of the $1 million of attached funds over Ex-L's other creditors, a bona fide dispute exists.  Ex-L's argument that Beta's initiation of the Clay County litigation, alleging that Ex-L's other creditors are insiders seeking a fraudulent conveyance, creates a bona fide dispute for purposes of § 303(h)(1) is flawed.  The debts owed to creditors, including Beta, are not disputed by Ex-L.  Even if a dispute by Beta would qualify for this purpose, Beta is not arguing that there is a dispute as to the amount or liability of any of the debts owed by Ex-L.  Such an assertion would be frivolous considering that, except for the debt owed to Beta which is undisputed, all of Ex-L's other debts have been reduced to judgment.  Rather, Beta is arguing that Ex-L is attempting to distribute the proceeds of the sale in a manner which may fun afoul of prohibitions of fraudulent conveyances.  The fact that the parties are litigating the priority of payment of Ex-L's debts does not establish that there is a bona fide dispute as to Beta's claim or any other claim.

Ex-L's next contention is essentially that Beta cannot "have its cake and eat it to."  Ex-L contends that if Beta's argument in the Clay County action is that it is the only creditor entitled to receive debt payment from Ex-L, it cannot simultaneously argue in bankruptcy court that there are several creditors and that this is not a case of a single creditor trying to utilize the bankruptcy court to collect an isolated claim.  Ex-L's reliance on *In re Nordbrock*, 772 F.2d 397, 399 (8th

Cir.1985) and *In re Whiteside, supra*, as support for its argument that a single petitioning creditor, holding an *undisputed* claim, may not initiate an involuntary petition in an effort to collect on an isolated debt, is misplaced. In *Nordbrock*, unlike here, there was a bona fide dispute as to the amount and liability of the single petitioning creditor's claim and it was the only claim which was not generally being paid by the proposed debtor. *Nordbrock*, 772 F.2d at 399. In this case, although similar to *Nordbrock* in that Beta is a single petitioning creditor, the debt owed to Beta is not disputed. Additionally, the testimony at trial was that none of Ex-L's other creditors, other than its legal counsel, are receiving debt payments. Similarly, in *Whiteside*, the Court found that the petitioning creditors failed to establish either that there does not exist a bona fide dispute as to liability and amount of the alleged debts or that the proposed debtor was not generally paying his debts as they became due. *Whiteside*, 238 B.R. at 470-72.

In neither case did the Court find that a single creditor holding an *undisputed* claim could not initiate an involuntary petition, a finding which would seemingly be in direct contravention to the unambiguous language of § 303(b)(2), which allows a single creditor holding an undisputed claim to initiate an involuntary bankruptcy under certain circumstances. 11 U.S.C. § 303(b)(2). Under § 303(b)(2), a single creditor may initiate an involuntary petition if there are fewer than 12 creditors and under § 303(h)(1), the court shall enter an order for relief if the petitioning creditor establishes that the proposed debtor is generally not paying its debts, which are not the subject of a bona fide dispute as to liability or amount. As discussed herein, Beta has established that there are fewer than 12 creditors, that none of Ex-L's debts are the subject of a dispute as to liability or amount and that Ex-L is generally not paying any of its debts as they become due, all facts which distinguish this case from those cited by Ex-L.

Finally, Ex-L argues that it is generally paying its all of its debts as they become due, except for those which are the subject of the Clay County litigation. The Bankruptcy Code does not provide a definition for the term "generally not paying" and courts have been reluctant to adopt a mechanical test for determining whether a debtor is generally paying his or her debts as they come due. *In re Feinberg,* 232 B.R. 164, 170 (Bankr. E.D. Mo.1999), judgment vacated in an unpublished opinion, (Dec. 16, 1999).

Rather, courts in this jurisdiction base a § 303(h)(1) analysis on a combination of factors including: the number of debts; the amount of the delinquencies; the materiality of the nonpayments; and the nature of the alleged debtor's conduct of his or her financial affairs. *Whiteside*, 238 B.R. at 471 *citing Feinberg,* 232 B.R. at 170 ("As a general statement 'not paying debts' includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the alleged debtor's operations."); *see also In re Laclede Cab Company*, 76 B.R. 687, 691 (Bankr. E.D. Mo.1987). The petitioning creditor has the burden of proof to show that a debtor is not generally paying its debts as they become due. *Whiteside*, 238 B.R. at 470.

In this case, there is an ample amount of relevant and substantial evidence which supports the Court's finding that Ex-L is not generally paying its debts as they become due. First, Mr. Hopkins testified that Ex-L owes approximately $10 million to five different creditors, none of which have received any payments since the bulk sale in August 2003. Second, the amount of the combined debt is significant because Mr. Hopkins testified that Ex-L's assets are worth only a total of $1.2 million ($1 million of attached funds and $200,000 in a Minnesota bank account), which means that even in the best case scenario, Ex-L would only able to pay its

creditors about 12% of the total amount owed. Third, Ex-L's non-payment is material in that it is no longer in business, thus, is no longer generating any income with which to pay its debts.

In its post-trial brief, Ex-L urges this Court to consider certain factors identified by a court in the Northern District of Oklahoma when analyzing whether a proposed debtor is generally not paying its debts. *See In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 632 (Bankr. N.D. Okla.2005). The Court notes first that the factors enumerated in the Oklahoma opinion do not appear to be the ones used in the Eighth Circuit to determine the propriety of granting involuntary relief and are more appropriate for considering whether the Court should abstain, a request which is not before the Court. Second, the case itself appears to be distinguishable on its facts. In *ELRS*, the claim of the principal petitioning creditor was the subject of a bona fide dispute, whereas here, Ex-L stipulated at trial that Beta's claim is not disputed as to liability or amount. In *ELRS*, at the time of the involuntary petition, the proposed debtor was still engaged in an ongoing business, whereas here, Ex-L has liquidated substantially all of its assets and is no longer in operation. The primary purpose for the involuntary petition in *ELRS* was an act to obtain control of the business by a former owner, and here, Beta's reason for initiating the involuntary petition was to get paid pursuant to the priorities established by the Bankruptcy Code.

Ex-L argues that it cannot make payments to the creditors which are identified in the Clay County litigation because there remains a dispute regarding which creditors should receive what amount of the $1 million in attached funds. As stated previously, there is no injunction which prohibits Ex-L from making payments to its creditors from its assets other than the attached $1 million. Thus, if Ex-L was truly committed to trying to pay its debts as they became

due, it could have paid out the remaining $200,000 that it has in the Minnesota bank account. Additionally, even if Ex-L were to use the entire $1 million of attached funds to pay its creditors, considering it owes a total of $10 million, it would only be paying 10% of its total debts. Or rather, because Ex-L contends that $500,000 of the attached funds are ear-marked, not for debt payment, but for non-compete agreements, it actually would only pay 5% of its debt, clearly not a significant amount. Considering that Ex-L is no longer in operation, thus no longer generating any income, that it owes $10 million and has, at best, the potential of paying only $1.2 million, the Court is not convinced that the ongoing litigation in Clay County is the primary reason that Ex-L is not generally paying its debts as they become due. Rather, the evidence shows that the reason Ex-L is generally not paying its debts as they become due is because it simply does not have the financial capability to do so.

### III. CONCLUSION

For all of the above reasons, the Court finds that Ex-L is not generally paying its debts as they become due. It is therefore

ORDERED that Ex-L's Motion to Dismiss is denied. It is further

ORDERED that an order for relief under Chapter 7 of the Bankruptcy Code shall be entered forthwith.

A separate order will be entered in accordance with Bankruptcy Rule 9021.


DATED:  February 16, 2007                   /s/ Dennis R. Dow
                                                       HONORABLE DENNIS R. DOW
                                                       UNITED STATES BANKRUPTCY JUDGE

Copies to:

Robert D. Maher
John T. Gregg
James A. Kessinger